MOGG, D.B.A. AIRPORT LIMOUSINE SERVICE, APPELLANT, *v.* OHIO BUREAU OF EMPLOYMENT SERVICES, APPELLEE.

(No. 81AP-342—Decided September 24, 1981.)

*Mr. Solomon Malkoff,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Paul Koscik,* for appellee.

CELEBREZZE, J. This cause came on to be heard upon the pleadings and the transcript of the evidence and record in the common pleas court, and was argued by counsel; on consideration whereof, the court certifies that in its opinion substantial justice has not been done the party complaining, as shown by the record of the proceedings and judgment under review, and judgment of said common pleas court is reversed. Each assignment of error was reviewed by the court and upon review the following disposition made:

The facts of this case are not in dispute. The appellant, Helen J. Mogg, d.b.a. Airport Limousine Service, operates a limousine business out of the Youngstown City Airport. Briefly stated, the appellant enters into agreements with drivers permitting them to use the business vehicles in exchange for a percentage of their earnings. Mrs. Mogg purchased the business from Grove City Bus Lines, Inc. (Grove City) on October 31, 1977.

On July 10, 1979, the appellee, Ohio Bureau of Employment Services, determined the appellant to be an employer liable to make unemployment contributions. The determination stated that Mogg was a successor in interest to Grove

City and was therefore required to assume the latter's account with the bureau. This determination was subsequently affirmed by an administrator's reconsidered decision and by a decision of the Bureau of Employment Services Board of Review.

On September 17, 1980, the appellant filed an appeal with the common pleas court which affirmed the decision of the board. The appellant thereafter instituted the within appeal and asserts as her sole assignment of error that the common pleas court erred in affirming the decision of the board of review. It is the appellant's contention that the limousine drivers are not in her employment within the meaning of R.C. Chapter 4141, and that, therefore, she is not liable to make unemployment contributions. In order to assess the merits of this contention, it is necessary to review the information which was before the board for consideration.

At the hearing on this matter, Mrs. Mogg testified to the manner in which the Airport Limousine Service conducts its business. The limousines are owned by Grove City and are leased to the appellant. The appellant also leases Grove City's PUCO license authorizing it to conduct a limousine service. The limousines are marked with Grove City's name and PUCO number.

The appellant permits various drivers to use the limousines pursuant to a Limousine Rental Agreement. Under this agreement, the drivers pay sixty percent of their gross earnings to Mogg and retain forty percent for themselves. Out of her share of the earnings, Mrs. Mogg buys gasoline for the vehicles and pays for all maintenance on them. Insurance for the vehicles and drivers is paid for by Grove City.

The arrangement between Mrs. Mogg and the drivers is very informal. The basic duty of the drivers is to meet passengers on incoming flights to the airport and drive them to specific destinations. The drivers determine which flights they will meet by consulting the airport's flight schedule. They are not required to report for duty at any specific time or for any particular amount of time. The appellant requires only that the drivers notify her in advance if they do not intend to meet a flight that they had earlier agreed to cover.

The appellant also requires the drivers to exercise reasonable care in driving and to take usual care of the vehicles. Mogg testified that she would "fire" any driver who was involved in an accident due to his own fault.

The drivers are responsible for collecting fares from the passengers and turning them over to Mogg at the end of each week. The drivers receive their compensation in weekly commission checks. Mrs. Mogg does not deduct taxes or social security payments from the checks. Rather, the drivers pay their own taxes under the status of self-employed individuals.

It is the contention of the appellant that the services of the limousine drivers, as described above, are excluded from the definition of "employment" as the term relates to unemployment compensation. R.C. 4141.01(B)(3)(g) sets forth an exclusion from the definition of "employment," as follows:

"(3) 'Employment' does not include the following services if they are found not subject to the 'Federal Unemployment Tax Act,' 84 Stat. 713 (1970), 26 U.S.C. 3301, and if the services are not required to be included under division (B)(2)(j) of this section:

"* * *

"(g) Service performed for one or more principals by an individual who is compensated on a commission basis, who in the performance of the work is master of his own time and efforts, and whose remuneration is wholly dependent on the amount of effort he chooses to expend, and which service is not subject to the 'Federal Unemployment Tax Act.' * * *"

It provides that four criteria must be satisfied for the exclusion to apply. These criteria are as follows:

(1) The individual is compensated on a commission basis;

(2) In the performance of his work, the individual is master of his own time and efforts;

(3) The individual's remuneration is wholly dependent upon the amount of effort he chooses to expend; and

(4) The individual's services are not subject to the Federal Unemployment Tax Act.

There is no question in the instant case but that the first and fourth criteria are satisfied. However, the board of review found, and the court below agreed, that the second and third criteria were not met. We do not agree with this finding.

The record in this case clearly indicates that the drivers are masters of their own time and effort. The flight schedule is posted by the airlines. The drivers simply refer to it and informally agree among themselves which driver will cover which flight. Mrs. Mogg requires the drivers to notify her in the event they intend to miss a flight simply because she herself is a driver and is responsible to meet those flights. The drivers are not required to work any specific amount of hours per day or per week. Nor is it required that the drivers wear a uniform. Finally, each driver files and pays his own individual income tax and pays his own social security tax.

The record also demonstrates that the drivers' remuneration is wholly dependent upon the amount of effort they choose to expend. Their hours are flexible as they basically cover whatever flights they so desire. The only limitation upon the number of flights met by any individual driver is the practical one that only one driver is needed per each flight.

In its opinion, the board of review stated that the second and third criteria were not satisfied as the drivers are only permitted to pick up fares at the airport and deliver them to specific destinations. They are not allowed to use the vehicles for general taxicab service. It is our conclusion that this fact does not alter the outcome of this case. The record indicates that these restrictions are not imposed by Mrs. Mogg. Rather, they are imposed by the Public Utilities Commission of Ohio pursuant to its regulatory authority. Therefore, the limitations are inherent in the airport limousine business and are not the result of an employer's personal exercise of control.

We find the facts of this case to be analogous to those presented in a case cited by the appellant, *Bur. of Unemp. Comp.* v. *Matteo* (1967), 9 Ohio App. 2d 95 [38 O.O.2d 106]. In that case, Matteo leased a barber shop and equipped it with five chairs. He also furnished a cash register, supplies and utilities and paid for all advertising for the shop. The other barbers furnished their own tools and made weekly contributions for janitorial and cleaning services. Each barber basically came and went as he pleased, but generally observed the hours posted on the shop door. At the end of the week, each barber received seventy percent of the amount he had deposited in the cash register and the remaining thirty percent went to Matteo. Each barber paid his own income and social security taxes.

Based upon these facts, the trial court directed a verdict for Matteo. The appellate court affirmed, stating that reasonable minds could come to but one conclusion that the barbers came within the exception set forth in R.C. 4141.01(B)(3)(g). *Id.* at 100. It should be noted, however, that at the time *Matteo, supra,* was decided, the applicable statutory requirement was designated as R.C. 4141.01(B)(2)(g).

On the basis of the foregoing, we find that the services of the limousine drivers are excluded from the definition of "employment" as it is set forth in R.C. Chapter 4141. Therefore, we find the ap-

250

pellant's assignment of error to be well taken.

The judgment is reversed and judgment is entered for the appellant.

*Judgment reversed.*

REILLY and MCCORMAC, JJ., concur.

CELEBREZZE, J., of the Eighth Appellate District, sitting by designation in the Tenth Appellate District.